**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DEMETRIC HOOPER, AIS #116907,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO: 12-00733-KD-B** |
| | * | |
| **MOBILE COUNTY METRO JAIL,** | * | |
| ***et al.,*** | * | |
| | * | |
| **Defendants.** | * | |

**REPORT AND RECOMMENDATION**

Plaintiff, a Mobile County Metro Jail pretrial detainee proceeding pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims either are frivolous or fail to state a claim upon which relief can be granted.

**I.  Complaint as Amended. (Docs. 1, 3).**

In his complaint, and motion to amend, Plaintiff complains about a myriad of matters and conditions that he has experienced since his arrival at the Mobile County Metro Jail ("jail") on October 26, 2012. (Doc. 1 at 4, 7). In the complaint, Plaintiff lists the following Defendants: Police Officers B.T. Hines, K.L.

Taylor, and J. Hensen, Sergeant Matthew James, and the jail. (Id. at 5, 11, 12). For relief, Plaintiff requests "police officers [be] fired," $2.5 million, and "changes at the jail and in the system especially the statement of innocent until proven guilty." (Id. at 20).

For the purposes of this recommendation, the Court is treating as true the allegations contained in Hooper's complaint, and his motion to amend. Hughes v. Lott, 350 F.3d 1157, 1159-60 (11th Cir. 2003). Hooper alleges that on October 29, 2012, at 10:13 a.m., he "vehemently [and repeatedly] refused" to be taken from the jail to the Mobile Police Headquarters. According to Hooper, he requested an attorney, but Defendant James took him by the arm and Defendants Hines, Taylor and Hensen, along with a Hispanic male by the name of Jaguar forced Plaintiff into handcuffs and shackles and then into a car pursuant to Defendant James's order. (Id. at 4-5, 13). Hooper asserts that several officers and inmates witnessed the incident and thought that a physical altercation might take place, and that Defendant James told him that he wanted to explain some things to Plaintiff. (Id. at 6, 13). Hooper was taken to the Mobile Police Headquarters, (id. at 4-5, 13), where he continued to state that he did not want to be there, that he was not going to talk, and that he wanted an attorney. (Id. at

2

6).   Hooper  was returned to the jail at 12:30.  (Id.).  This is
the  essence  of  the  claim  that  Hooper  has  lodged  against
Defendants James, Hines, Taylor, and Henson.  (Id. at 13 -16).

Included  in  the  Hooper's  complaint  are  his  opinions
regarding  the  legal  system.   However,  he  has  not  articulated  a
specific  claim  concerning  the  legal  system  or  connected  his
assertions to any of the Defendants to these statements.  (Id. at
9).   For  instance,  Hooper  "challenge[s]  th[e]  government's
stance  that  we  are  innocent  until  proven  guilty."  (Id.).   He
ponders  if  we  were  innocent,  then  why  are  we  arrested  when
someone accuses us of a crime.  (Id.).   Then, he opines that one
must prove oneself innocent, as is his case.  (Id. at 10).

The  remaining  allegations  are  directed  at  Defendant  Mobile
County  Metro  Jail.  (Id.  at  12).   Hooper  complains  that  he
arrived  at  the  Mobile  Metro  Jail  from  Arkansas  on  October  26,
2012  at  9:46  p.m.,  and  that  he  was  not  taken  before  a  Judge
until  October  30,  2012,  which  is  more  than  the  72-hour  maximum.
(Id. at 17).

Next,  Hooper  complains  about  conditions  at  the  jail.  (Id.).
He  complains  that  the  conditions  are  unsanitary  and  that  such  is
evidenced  by  the  fact  that  Defendant  James  transferred  him  from
a  cell  where  he  had  a  bed  to  an  overcrowded  cell  where  he  had  to
sleep  on  the  floor  by  the  toilet.  (Id.  at  9,  17).   Hooper

3

complaints that in the cells, the lights are on twenty-four hours a day seven days a week, and that this drives him crazy. (Id.). He also asserts that he filed sixteen request forms and four grievance forms, that most of his forms were thrown away, and that only one grievance form and two request forms have been returned to him. (Id.).

In addition, Hooper complains that the food does not have a sufficient amount of daily calories, and notes that he arrived at the jail weighing over 185 pounds and now he weighs just over 170 pounds. (Id. at 7, 18). Hooper asserts as an example, that on November 21, 2012, his breakfast consisted of "one boiled egg, a very thin slice of bologna and two waffle halves." (Id.).

Hooper also contends that the manner in which food is delivered to inmates causes fights. (Id. at 8, 18.). According to Hooper, while inmates are locked in their cells, other inmates deliver food trays and stack them on a table. (Id.). Once the inmates are released from their cells, they are "like hounds and the race is on." (Id.). Fights break out because some inmates will take food and cups of juice off of trays intended for other inmates. (Id.). "The saying is 'sleep late lose weight,'" which officers joke about. (Id.).

Hooper also contends that when he arrived at the jail from Arkansas, an officer went through his property and gave him the

4

things that he was allowed to have at the jail. (Id.).
According to Hooper, after his property had already been
searched, Officer Poling then took a cup, a towel containing his
"Qur'an", another towel that he used as prayer rug, and other
items from him. (Id.). Hooper contends that when Officer Poling
took the towel containing the Qur'an, she shook it and caused
his very old Qur'an to be "severe[ly]" damaged when it hit the
floor. (Id. at 7, 19). Hooper asserts that he was doing his
best "with prayer," but by her actions she effectively put a
stop to his efforts to worship, as the jail does not have prayer
rugs or a proper place to pray. (Id. at 8, 18). Hooper further
asserts that he turned in a request and grievance about this,
but nothing has been done about it. (Id. at 18). Hooper also
asserts that in response to his request for a law library, he
was told that the jail does not have one. (Id. at 8, 18).

According to Hooper, when he arrived at the jail, the
marshal who transported him had his "medication," but he was not
given the "medication" at the jail even though he filed requests
and grievances regarding his medication. (Id. at 8, 19). Hooper
asserts that his lawyer later asked the judge to order the jail
to give Plaintiff his "medication", and that on November 6,
2012, the judge issued an order which resulted in him seeing a
doctor and receiving his "medication" on November 10, 2012.

(Id.).

In his motion to amend, Hooper states that he now has the address for Defendants B.T. Hines, K.L. Taylor, J. Hensen, Sergeant Matthew James, and the jail.  He also complains that getting to the top bunk is not safe because no ladders are provided; thus, inmates have to jump up and down off of the bunks. (Doc. 3 at 1).  Hooper contends that he "almost busted [his] foot."  (Id.).

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding in forma pauperis, the Court is reviewing his complaint as amended (Docs. 1, 3) under 28 U.S.C. § 1915(e)(2)(B).  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32, 104 L. Ed. 2d 338 (1989).  A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, id. 490 U.S. at 327, or the claim seeks to enforce a right that clearly does not exist. Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must

show plausibility. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Twombly</u>, 550 U.S. at 555 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. <u>Jones v. Bock</u>, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007).

When considering a <u>pro se</u> litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S. Ct. 594, 595-596, 30 L. Ed. 2d 652 (1972). The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to

sustain an action." GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Randall v. Scott, 610 F.3d 791, 710 (11th Cir. 2010) (relying on Iqbal, 566 U.S. 662, 129 S.Ct. 1937).  Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. Iqbal, 556 U.S. at 681.  In addition, a pro se litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

**III. Discussion.**

   **A.  Defendants Hines, Taylor, Hensen, and James.**

   In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662 (1986).  Additionally, a plaintiff must causally connect a defendant's actions, omissions, customs, or

8

policies to a deprivation of his constitutional or federal rights in order to state a claim under § 1983. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982), cert. denied, 464 U.S. 932 (1983).

With respect to Hooper's claim against Defendants Hines, Taylor, Hensen, and James, the only claim the Court can discern approaching the level of a constitutional violation concerns the amount of force employed to get Hooper into handcuffs and shackles and then into the vehicle. The determination of whether an inmate's constitutional rights have been violated "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting Whitley v. Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) (establishing the standard for an Eighth Amendment excessive force claim). To make this determination a court looks at "the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner." Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987) (citing

Whitley, 475 U.S. at 321.  This Eighth Amendment standard is also used when addressing a pretrial detainee's claims of excessive force under the Fourteenth Amendment, which is the situation in the present case. Cockrell, 501 F.3d at 1311.  An inmate's substantive due process rights, under the Fourteenth Amendment, are violated when a guard's action "is so egregious that it shocks the conscience." Id.  "If force is used 'maliciously and sadistically for the very purpose of causing harm,' then it necessarily shocks the conscience." Id.

Hooper has not described the force that was used to handcuff and shackle him, and then place him in the vehicle. Moreover, Hooper has not asserted any facts that reflect that force beyond that which was necessary was used to accomplish the legitimate tasks of managing a pretrial detainee.  In fact, Hooper states "that all the other inmates in the holding area fled to the opposite side of the room for fear of a physical altercation." (Id. at 15).  This statement indicates that the application of force had not escalated into a situation that could be deemed a physical altercation.  This deduction is warranted because no allegations of a physical altercation or an injury were asserted.  Therefore, the reasonable implication is that no physical force was employed beyond what was necessary to place Plaintiff in handcuffs and shackles and to put him in the

10

vehicle and that Defendants' actions were taken in good faith in furtherance of their duties.  Accordingly, the Court finds that Hooper has failed to state a claim of excessive force under the Fourteenth Amendment and that his claim against these Defendants is due to be dismissed with prejudice. See Wilkins v. Gaddy, 559 U.S. 34, 38, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."); see also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force.  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."); Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) (finding in a Fourth Amendment case that the force used to make a custodial arrest was not excessive when the officer "grabbed the [suspect] by the arm, forced him to the ground, placed him in handcuffs, and searched him"); Nolin v. Isbell, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (finding in a Fourth Amendment case no excessive force was used in the plaintiff's lawful arrest when the defendant "grabbed [plaintiff] and shoved

11

[plaintiff] a few feet against a vehicle, pushed [his] knee into [plaintiff's] back and [plaintiff's] head against the van, searched [plaintiff's] groin area in an uncomfortable manner, and placed [plaintiff] in handcuffs [all from which the plaintiff] had minor bruising which quickly disappeared without treatment"); Sepulveda v. Burnside, 170 F. App'x 119, 124 (11th Cir 2006 (unpublished) (finding that the defendant "jerk[ing plaintiff] by the ankle while checking his leg shackles" was not excessive force); Bakari v. City of Byron, 2005 WL 2736513, at *5 (M.D. Ga. Oct. 24, 2005) (finding that "putting handcuffs on a noncompliant, boisterous arrestee is, without question, a physical restriction reasonably related to a legitimate law enforcement objective" and therefore the Fourteenth Amendment claims failed).

**B. Defendant Mobile County Metro Jail.**

The remaining Defendant to this action is Mobile County Metro Jail. (Doc. 1 at 17). Plaintiff directs the bulk of his claims against this Defendant. (Id.). These claims are as follows: Being held in excess of seventy-two hours before he saw a judge, (id.), unsanitary and overcrowded conditions, (id.), unresponsiveness to grievances and requests, (id.), inadequate food and food delivery, (id. at 18, 19), deprivation of property, (id. at 18), interference with the exercise his

12

religion (Islam), (id.), lack of access to a law library, (id.), lack of his prescribed medication (id. at 19), and inability to obtain the addresses of the Defendants. (Id.).

Liability under § 1983 can only be imposed against a person, Parratt, 451 U.S. 527, 535, or an entity that is capable of being sued. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992). The capacity of a party to be sued is "determined by the law of the state in which the district court is held[.]" Fed.R.Civ.P. 17(b); see Dean, 951 F.2d at 1214.

Under Alabama law, the sheriff, or a jailer who is appointed by the sheriff, "has the legal custody and charge of the jail in his county and all prisoners committed thereto. . . ." Ala. Code § 14-6-1. Generally, a sheriff's department operates a county jail. However, an Alabama sheriff's department lacks the capacity to be sued. Dean, 951 F.2d at 1214; King v. Colbert Cnty., 620 So.2d 623, 626 (Ala. 1993); White v. Birchfield, 582 So.2d 1085, 1087 (Ala. 1991). Then, it follows that the jail likewise lacks the capacity to be sued. See Russell v. Mobile County Sheriff, No. Civ. A. 00-0410-CB-C, 2000 WL 1848470 (S.D. Ala. Nov. 20, 2000) (unpublished) (finding that the Mobile County Jail is not a suable entity); see also Marsden v. Federal Bureau of Prisons, 856 F.Supp. 832, 836 (S.D.N.Y. 1994) (finding that the jail is not an entity amenable

to suit); <u>House v. Cook Cnty. Dept. of Corrs.</u>, No. 98 C 788, 1998 WL 89095 (N.D. Ill. Feb. 13, 1998) (unpublished) (same); <u>May v. North Cnty. Det. Facility</u>, No. C 93-1180 BAC, 1993 WL 300290 (N.D. Cal. July 21, 1993) (unpublished) (same); <u>cf.</u> <u>Castillo v. Cook Cnty. Mail Room Dept.</u>, 990 F.2d 304, 307 (7th Cir. 1993) (finding that because the jail is not a suable entity, then it follows that the subdivision, the mail room, is not a suable entity).

The undersigned thus finds that Defendant Mobile County Metro Jail is not a suable entity or a person for § 1983 purposes. Accordingly, Plaintiff's claims against this Defendant are frivolous as a matter of law.

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file

14

specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Aʟᴀ. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **17th** day of **June, 2013.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

15